IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01980-RM-KLM

BRYAN RAWLINGS,
BRITTANY VASQUEZ,
SYLVIA COPPIN, and
MICHAEL COPPIN,

    Plaintiffs,

v.

CITY OF FOUNTAIN, COLORADO, and
MATTHEW RACINE, Sergeant, individually and in his official capacity,

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendants' **Motion to Dismiss** [#23][1] (the "Motion"). Plaintiffs filed a Response [#26] in opposition to the Motion, and Defendants filed a Reply [#29]. The Motion has been referred to the undersigned for a recommendation regarding disposition pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1(c)(3). *See* [#28]. The Court has reviewed the Motion, Response, Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#23] be **GRANTED**.

---

[1] "[#23]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Recommendation.

## I. Background

The well-pled facts of the Amended Complaint [#1] are construed in a light most favorable to Plaintiffs. *Barnes v. Harris*, 783 F.3d 1185, 1191-92 (10th Cir. 2015). Plaintiffs are Bryan Rawlings ("Rawlings"), Brittany Vasquez ("Vasquez"), Sylvia Coppin ("S. Coppin"), and Michael Coppin ("M. Coppin") who live together at 117 Yearling Court, Fountain, Colorado. *Am. Compl.* [#21] at ¶ 9. Plaintiffs Rawlings and Vasquez both had a Medical Marijuana Physician Certification, and the household is permitted to grow up to eighty marijuana plants pursuant to Article XVIII, §§ 14 and 16 of the Colorado Constitution. *Id.* at ¶ 10. On the morning of July 22, 2016, a City of Fountain Police Department SWAT Team conducted a search of the Yearling Court property. *Id.* [#21] at ¶ 12. The search was conducted pursuant to a search warrant for which Defendant Matthew Racine ("Racine") had applied. *Id.* at ¶ 13. In the affidavit for the search warrant, Defendant Racine noted that he saw two "plastic white tent[s]" in the residence's backyard with "thin clear plastic" and that he observed "the top of a live Marijuana plant inside" one of those tents. *Racine Aff.* [#23-1] at 5.[2] Plaintiffs maintain that the "secured and locked greenhouse in the backyard . . . was not visible to public view." *Am. Compl.* [#21] at ¶ 11. Moreover, Plaintiffs complain that "[t]he police failed to conduct proper research through the Colorado Medical Marijuana Registry maintained by the Colorado Department of Public

---

[2] Both parties have agreed that the search warrant may be considered for purposes of this Motion because the warrant is "central to [P]laintiffs' claim[s] and the parties do not dispute the [warrant's] authenticity." *See Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013) (citing *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010)); *see also GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381,1384 (10th Cir. 1997) (stating that on Rule 12(b)(6) motion, the Court may consider outside documents that are both central to the plaintiffs' claims and to which the plaintiffs refer in their complaint). The Court has considered the warrant itself, "rather than the [C]omplaint's description of it." *See Toone,* 716 F.3d at 521 (citing *Gee,* 627 F.3d at 1183;

Health and Environment to determine whether Plaintiff [sic] had the right to grow medical marijuana before it raided his [sic] home with a SWAT Team." *Id.* at ¶ 14.

The SWAT Team entered the home in what Plaintiffs describe as a manner causing "serious emotional pain and suffering, mental anguish, shock, [and] fright" and "ordered Plaintiffs . . . out of the home at gunpoint," despite Plaintiffs being in various levels of undress. *Id.* at ¶¶ 16, 18, 19, 33. The SWAT Team also allegedly injured Plaintiff S. Coppin's shoulder in the process of detaining her. *Id.* at ¶ 20. Finally, Plaintiffs contend that the experience was humiliating because neighbors observed the SWAT Team raid and Plaintiffs were required to stay outside for "approximately one hour." *Id.* at ¶ 21. When the search concluded, Plaintiff Rawlings was told he would be criminally charged for offenses relating to marijuana and for offenses relating to child abuse. *Id.* at ¶ 22. Plaintiffs Rawlings and Vasquez were later issued summonses and complaints but when they arrived at their arraignment hearings, they learned that no charges had been filed against them. *Id.* at ¶¶ 24, 30. Plaintiffs allege that this also caused them emotional distress and to incur legal expenses. *Id.*

Plaintiffs assert three constitutional violations by Defendant Racine and the City of Fountain: (1) deprivation of the rights secured by the Fourth and Fourteenth Amendments to be secure from unreasonable searches and seizures, (2) excessive force prohibited by the Fourth Amendment, and (3) deprivation of the right to liberty protected by the Fifth and Fourteenth Amendments. *Id.* at ¶¶ 40-50. Specifically, Plaintiffs contend that Defendant Racine acted under color of state law in his duties as Police Sergeant and that the City Defendant failed to adequately train its officers to avoid such constitutional deprivations. *Id.* at ¶¶ 7, 8, 35-38. For these alleged constitutional deprivations, Plaintiffs seek a

declaration that Defendants' conduct violated the Fourth, Fifth, and Fourteenth Amendments; a mandatory injunction requiring that Defendants deliver any arrest information arising from the raid to Plaintiffs and expungement of their records; compensatory damages for emotional distress, bodily harm, costs related to Plaintiffs' criminal defenses, and any other compensatory damages as permitted by law; punitive damages against Defendants jointly and severally; attorneys' fees; costs of suit; and other relief the Court finds is appropriate and equitable. *Id.* at 13-14. Defendants bring this Motion [#23] to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6).

## II. Standard of Review

To survive a 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff, *Barnes*, 783 F.3d at 1191-92, conclusory allegations are not entitled to be presumed true, *Iqbal*, 556 U.S. at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

## III. Analysis

**A.    Defendant Racine: Qualified Immunity**

Defendant Racine contends that he is shielded by qualified immunity for claims brought against him in his individual capacity. *Motion* [#23] at 5. "The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Resolving the question of immunity involves a two-pronged test: (1) a court must decide whether the facts that a plaintiff has alleged make out a violation of a constitutional right and (2) a court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)) (holding that although qualified immunity determination involves a two-part inquiry, if the plaintiff fails either inquiry reviewed in any order, no further analysis need be undertaken and qualified immunity is appropriate).

**1.    First Claim: Search and Seizure**

Plaintiffs first allege that their Fourth and Fourteenth Amendment rights to be free from unreasonable searches and seizures were violated by Defendant Racine. If a search warrant is "so obviously deficient" that the search is essentially warrantless, the search is presumptively unreasonable. *Groh v. Ramirez*, 540 U.S. 551, 558 (2004). One way a search warrant can be so deficient is if "it 'was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable' . . . or unless the affiant has misrepresented or omitted material facts to the judge issuing the

warrant . . . ." *Harte v. Bd. of Comm'rs of Cty. of Johnson, Kan.*, 864 F.3d 1154, 1174 (10th Cir. 2017) (citations omitted). However, the "negligence or innocent mistakes [of an officer] are insufficient to challenge a warrant affidavit's validity." *Id.* (quoting *Franks v. Delaware*, 438 U.S. 154, 171 (1978)).

Plaintiffs allege that the SWAT Team "had no probable cause" to search Plaintiff's property and that "their actions were based on malice and bad faith." *Am. Compl.* [#21] at ¶ 32. Plaintiffs further contend that although Defendant Racine did obtain a search warrant, the warrant was invalid because "the facts and circumstances within [Defendant Racine's] knowledge at the time the application for the search warrant was made did not provide a reasonably trustworthy basis for a person of reasonable caution to believe that a criminal offense had been committed . . . ." *Id.* at ¶ 13. Here, Plaintiffs have offered only conclusory statements regarding the lack of probable cause and bad faith of Defendant Racine in obtaining the warrant. *See id.* The Complaint fails to specify what "knowledge" he allegedly possessed that should have led him to conclude that no criminal offense had been committed. While Plaintiffs' Response [#26] implies conclusorily that Defendant Racine may have lied in drafting the warrant, the Amended Complaint [#21] itself is void of any explanation as to why the warrant is invalid. *See* [#26] at 10. Without including further factual allegations in the Amended Complaint, Plaintiffs have failed to adequately allege a constitutional violation and Defendant Racine is shielded by qualified immunity. *See Iqbal*, 556 U.S. at 681. Accordingly, the Court respectfully **recommends** that Plaintiffs' first claim be **dismissed without prejudice** against Defendant Racine in his individual capacity. *See Crump v. James Irwin Charter Sch.*, No. 12-cv-00008-PAB-KLM, 2012 WL

1247186, at *3-4 (D. Colo. Mar. 21, 2012) (dismissing claims pursuant to Rule 12(b)(6) without prejudice).  *See Reynoldson v. Shillinger*, 907 F.2d 126, 127 (10th Cir. 1990) (holding that prejudice should not attach to a dismissal when plaintiff has made allegations "which, upon further investigation and development, could raise substantial issues").

### 2. Second Claim: Excessive Force

Plaintiffs' next claim is that excessive force was used in detaining Plaintiff S. Coppin because her shoulder was allegedly injured in the process.  However, Plaintiffs have not sufficiently indicated that Defendant Racine personally participated in this alleged constitutional violation.

Personal participation is an essential element in § 1983 actions.  *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976).  Personal participation in violating the Constitution must be shown by each defendant, and this participation must be more than just supervisory responsibility for the actions of inferiors.  *See Iqbal*, 556 U.S. at 676.  For allegations against supervisors, the plaintiff must be able to show an "affirmative link" between the alleged constitutional violation and the specific individual's participation in that violation.  *Kite v. Kelley*, 546 F.2d 334, 337 (10th Cir. 1976).  For example, an affirmative link is established if the defendant "participated or acquiesced in the constitutional deprivations . . . ." *Id.*

Plaintiffs have alleged no such "affirmative link" to Defendant Racine or even that the SWAT Team was specifically under his command.  In fact, the Amended Complaint does not even allege that Defendant Racine was present during the raid.  The Amended Complaint simply states that "*[t]hey* handcuffed Plaintiff . . . [S.] Coppin at gunpoint during which *they* injured [her] shoulder by using excessive force."  *Am. Compl.* [#21] at ¶ 20.

"They" appears to refer to the SWAT Team. *See id.* [#21] at ¶¶ 18-20. Because Defendant Racine may not be held liable on a theory of respondeat superior, Plaintiffs have failed to state that Defendant Racine personally violated the constitutional mandate prohibiting excessive force, and he is shielded by qualified immunity. Accordingly, the Court respectfully **recommends** that the claim for excessive force against Defendant Racine in his individual capacity be **dismissed with prejudice**. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-1217 (10th Cir. 2006) (holding dismissal on the merits of the complaint is ordinarily with prejudice).

### 3. Third Claim: Right to Liberty

The third and final claim against Defendant Racine is for violation of the Fifth and Fourteenth Amendments through violating Plaintiffs' "right to be free from any deprivation of liberty." *Am. Compl.* [#21] at ¶ 49. First, the Fifth Amendment applies only to the federal government. *See Baker v. State*, No. 13-cv-01334-PAB-KLM, 2014 WL 624342, at *3 n.2 (D. Colo. Feb. 18, 2014). Defendant Racine is not part of the federal government in his individual capacity (nor is he a member of the federal government in his official capacity through the City of Fountain Police Department). Therefore, Plaintiffs do not properly allege a Fifth Amendment violation.

Regarding the Fourteenth Amendment allegations, the Court agrees with Defendants that insofar as this claim relates to the alleged "intrusion into a dwelling or private place" of Plaintiffs', the claim is subsumed by their Fourth Amendment claim. *Id.*; *see also Motion* [#23] at 16. The third claim focuses only on the "unwarranted government intrusions into a dwelling . . . ." and Plaintiffs' arrest does not seem to be at issue here. *Am.*

*Compl.* [#21] at ¶ 49. Therefore, the only allegations laid out in the third claim are duplicative of the allegations supporting the alleged Fourth Amendment violations. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Conner*, 490 U.S. 386, 395 (1989)). As determined above, Defendant Racine is shielded by qualified immunity on this claim.

Therefore, the Court respectfully **recommends** that the third claim against Defendant Racine in his individual capacity be **dismissed with prejudice**. *See Brereton*, 434 F.3d at 1216-1217 (holding dismissal on the merits of the complaint is ordinarily with prejudice).

**B.** *Monell* **Claim**

Plaintiffs also assert the above claims against the City of Fountain. Specifically, Plaintiffs allege that the failure to "train, supervise and discipline" its officers was a consequence of the deliberate policies and practices of the City and that those policies are "in part" responsible for the alleged constitutional violations. *Am. Compl.* [#21] at ¶ 35.

    **1.**    **Alleged Constitutional Violation**

An initial question when discussing municipality liability for a failure to train is whether there was a constitutional violation by the municipality's employees. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) ("[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between

a municipal policy or custom and the alleged *constitutional deprivation*" (emphasis added)). For the same reasons that Plaintiffs have failed to sufficiently allege an unreasonable search against Defendant Racine, Plaintiffs have failed to allege a claim for unreasonable search and seizure against the City. In short, Plaintiffs have failed to identify how or why the warrant was invalid, thus making the search unreasonable. Likewise, as stated above, they have failed to allege any Fifth Amendment violation or any Fourteenth Amendment violation not subsumed by the Fourth Amendment. The remaining claim is for excessive force. Even assuming that the Amended Complaint sets out facts which plausibly allege excessive force under the Fourth or Fourteenth Amendment based on the actions of various unnamed police officers in injuring Plaintiff S. Coppin's shoulder, although she "pose[d] no immediate threat to the safety of others, and she did not actively resist arrest or attempt to evade arrest by flight," the claim fails on the second prong of a *Monell* claim, causation, as discussed below. *Am. Compl.* [#21] at ¶ 45.

### 2. Causation Through Policy or Custom

In order to be held liable under § 1983, the municipality must cause the constitutional violation itself; thus the "inquiry in any case alleging municipality liability under § 1983 is . . . whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 385. Moreover, "inadequacy of . . . training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [inadequately trained officers] come into contact . . . [because] [o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy

or custom' that is actionable under § 1983." *Id.* at 388-99.

Plaintiffs have failed to properly allege a claim for municipal liability for excessive force in several respects. As a preliminary matter, Plaintiffs have not specified on which topic the City of Fountain Police Department has failed to adequately train its officers. This alone arguably does not put the City Defendant on notice of the claims alleged against it. Reading the Amended Complaint [#21] in a light most favorable to the Plaintiffs, they seem to allege that the City Defendant failed to train officers how to properly conduct a search so as not to use excessive force. However, they have offered nothing more than conclusory statements regarding the City of Fountain's "deliberate indifference." One way of showing "deliberate indifference" is to cite a pattern of tortious conduct. *See Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). Because a pattern of consistent constitutional violations puts a city on constructive notice that its failure to train is a problem, by not fixing the pattern, the city can then be said to display "deliberate indifference." *Id.* The Amended Complaint merely states that the City of Fountain's policies promote deliberate indifference and that the raid at issue was "not an isolated episode" because other raids occurred on the same day. *Am. Compl.* [#21] at ¶ 36. Raids occurring on the same day do not sufficiently allege a "pattern of tortious conduct" supporting deliberate indifference because events of such temporal proximity could not reasonably have put the City of Fountain on constructive notice of the need to train officers about execution of the raids. Moreover, Plaintiffs fail to assert that the other raids were also constitutionally infirm, thus leaving the Court to speculate as to why the City would have been put on notice of alleged training deficiencies.

A related shortcoming of Plaintiffs' *Monell* claim is their failure to allege that the

City's supposed indifference was the cause of the deprivation of constitutional rights here. Plaintiffs must show a "direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997). Plaintiffs have not alleged the requisite causation to make their claim of municipal liability plausible. They merely allege that the failure to train is "likely" a cause or "in part responsible" for the alleged excessive force. *See Am. Compl.* [#21] at ¶¶ 35, 38. Given that "[t]he causation element is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training . . . .[,]" this element of a *Monell* claim is not satisfied. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (citation omitted). Accordingly, the Court respectfully **recommends** that all claims against the City of Fountain be **dismissed with prejudice.** *See Brereton*, 434 F.3d at 1216-1217 (holding dismissal on the merits of the complaint is ordinarily with prejudice).

**C.    Defendant Racine: Official Capacity**

Plaintiffs have also brought their claims against Defendant Racine in his official capacity. Because these claims are the same as those brought against the City and because "a suit against a state official in his or her official capacity is . . . a suit against he official's office," the claims fail for the same reasons stated above. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, the Court respectfully **recommends** that the claims against Defendant Racine in his official capacity be **dismissed with prejudice**. *See Brereton*, 434 F.3d at 1216-1217 (holding dismissal on the merits of the complaint is ordinarily with prejudice).

## IV. Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that the Motion [#23] be **GRANTED** and that all claims be **DISMISSED with prejudice**, except for the claim for Fourth Amendment violation relating to unreasonable search and seizure against Defendant Racine in his individual capacity, which should be **DISMISSED without prejudice**.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: July 10, 2018

BY THE COURT:

*[signature]*

Kristen L. Mix
United States Magistrate Judge